```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
PEERLESS INSURANCE COMPANY,                                  :
                                                             :
                           Plaintiff,                        :
                                                             :   **MEMORANDUM DECISION AND**
             -against-                                       :   **ORDER**
                                                             :
TECHNOLOGY INSURANCE COMPANY,                                :   18-cv-1553 (BMC)
INC.,                                                        :
                                                             :
                           Defendant.                        :
                                                             :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff brought this action for a declaration that defendant must defend and indemnify plaintiff's insured in an underlying personal injury action. Plaintiff also seeks a declaration that defendant must indemnify plaintiff for costs incurred in the underlying action. The parties have filed cross-motions for summary judgment. As there are no remaining genuine issues of material fact, plaintiff's motion for summary judgment is granted in part as to defendant's duty to defend and indemnify plaintiff's insured, and defendant's motion for summary judgment is granted in part as to plaintiff's status as a co-primary insurer.

## BACKGROUND

Non-party Amelia Associate's, Inc. ("Amelia") leased to non-party Vintage Steakhouse, LLC ("Vintage") a property located in a shopping center for use as a steakhouse (the "Lease").[1]

In February 2017, non-parties Kathleen Mich and William J. Mich, Jr. commenced an action in New York State court against Delmonico's Porterhouse, LLC, Vintage, and Amelia (the

---

[1] The Lease, dated November 3, 2000, and amended March 10, 2002, was initially between Amelia (the landlord) and Delmonico's Porterhouse, LLC (the tenant). Delmonico's Porterhouse, LLC later rebranded as Vintage. These two entities are therefore the same for the purposes of this case.

"Underlying Action"). Mr. and Ms. Mich alleged that: Ms. Mich was injured after tripping and falling on the sidewalk while walking into Vintage; Vintage was the owner and tenant of the premises where the fall occurred; Vintage operated and maintained the premise where the fall occurred; and Vintage caused the sidewalk to be constructed in a dangerous condition.

### A. The Lease

The Lease was in effect on April 18, 2014, when Ms. Mich fell. The Lease defines the "Premise" as "[t]he premises consisting of approximately 2,791 square feet of gross leasable area, as cross-hatched on Exhibit A." Exhibit A depicts the entire shopping center, with the building leased to Vintage cross-hatched. Notably, the sidewalk where Ms. Mich fell is not cross-hatched.

### B. The Insurance Policies

Both Amelia and Vintage had insurance policies that covered injuries sustained from falls like Ms. Mich's. Amelia took out a general liability insurance policy from plaintiff (the "Peerless Policy"). The Peerless Policy covers damages arising from falls like Ms. Mich's, and it was operative when Ms. Mich fell. Section IV of the Peerless Policy limits coverage when other collectable insurance is available for a loss that would typically be covered under the policy. If, in that scenario, the coverage is "primary" under the Peerless Policy, then plaintiff shares liability with the provider of the other collectable insurance as a co-primary insurer. But if the Peerless Policy only provides coverage that is "excess over" another policy, then then plaintiff's liability is limited. Section IV(4)(b) states that the Peerless Policy is "excess over . . . any other primary insurance available to [Amelia] covering liability for damages arising out of the premises or operations for which [Amelia has] been added as an additional insured . . . ."

Vintage obtained its own general liability insurance policy from Tower National Insurance Company ("Tower"), and defendant assumed Tower's duties and rights under the policy after Tower's liquidation (the "Technology Policy"). The Technology Policy also covers damages arising from falls like Ms. Mich's and was operative when she fell. Pursuant to the Lease, the Technology Policy lists Amelia as an "additional insured" (the "AI Endorsement"). But Amelia's coverage under the AI Endorsement excludes "[l]iability for 'bodily injury' or 'property damage' that is not sustained within that part of the premises leased to [Vintage]." This coverage is "excess over any primary insurance available to the additional insured."

### C. The Coverage Dispute

On June 1, 2015, Liberty Mutual Insurance, on behalf of plaintiff, advised defendant's claims administrator, Am Trust North America ("AmTrust"), that it would tender Mr. and Ms. Mich's personal injury claims against Amelia to AmTrust. On July 10, 2015, AmTrust denied the tender, noting that the Technology Policy does not cover Amelia in the Underlying Action because Ms. Mich fell on a sidewalk that was not included in the Lease. Specifically, AmTrust cited the clause of the AI Endorsement that excludes liability from injuries not "sustained within that part of the premises leased to [Vintage]."

Over the next two years, plaintiff sent several letters asking defendant to reconsider the denial or to at least provide co-insurance for the damages. But defendant repeatedly reiterated its position. Plaintiff commenced this action on March 14, 2018.

## **DISCUSSION**

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is

3

entitled to judgment as a matter of law." "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Nonmovants must put forward some "concrete evidence from which a reasonable juror could return a verdict in his favor" to withstand a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997).

Here, defendant argues that the property leased to Vintage did not include the sidewalk on which Ms. Mich fell, so the AI Endorsement's coverage does not extend to Amelia in the Underlying Action; instead, defendant argues, the policy's provision excluding coverage for bodily injuries that occur in common areas not on the leased premises applies. Plaintiff argues that injuries sustained on the sidewalk are covered under the AI Endorsement (because the injury occurred on the leased premises), and that defendant improperly relies on extrinsic evidence in denying coverage.[2]

"The construction of an insurance contract is ordinarily a matter of law to be determined by the court." U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc., 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003). Under New York law,[3] an insurer has a duty to defend its insured if the allegations in, for example, a personal injury action arising from an alleged accident, "are even potentially within the language of the insurance policy . . . ." Town of Massena v. Healthcare

---

[2] Because defendant stipulated that Amelia is included as an insured person on the "Schedule" of the AI Endorsement (the first requirement for the AI Endorsement to come into effect), the only issue in these cross-motions is whether defendant's liability extends to Amelia because Ms. Mich's accident occurred on the insured premises (the second requirement for the AI Endorsement to come into effect).

[3] The parties agree that New York State law governs the insurance policies at issue.

4

Underwriters Mut. Ins. Co., 98 N.Y.2d 435, 443, 749 N.Y.S.2d 456, 459 (2002); see Fitzpatrick v. American Honda motor Co., 78 N.Y.2d 61, 63, 571 N.Y.S.2d 672, 672-73 (1991) (holding that an insurer has a duty to defend its insured even if the pleadings indicate that the claim was not covered).

If an "exclusion clause is relied upon to deny coverage, the burden rests upon the [insurer] to demonstrate that the allegations of the complaint can be interpreted only to exclude coverage." Euchner-USA. Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 142 (2d Cir. 2014).

Insurers denying a duty to defend must rely on evidence within the "four corners of the [underlying] complaint." See Frontier Insulation Contractors, Inc. v. Merchants Mut. Ins. Co., 91 N.Y.2d 169, 175, 667 N.Y.S.2d 982, 984 (1997). But if the policy's language is ambiguous, the court should interpret the policy "from the vantage point of the reasonable expectations and purposes of the ordinary person." Haber v. St. Paul Guardian Ins. Co., 137 F.3d 691, 695 (2d Cir. 1998). A court "need not ignore positive proof, extrinsic to the [underlying] complaint, that assists in clarifying an ambiguous allegation." Moreau v. Orkin Exterminating Co., 165 A.D.2d 415, 418, 568 N.Y.S.2d 466, 468 (3d Dep't 1991); see also McCostis v. Home Ins. Co. of Ind., 31 F.3d 110, 113 (2d Cir. 1994).

If "extrinsic evidence does not yield a conclusive answer as to the parties' intent, [a court may] resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured." McCostis, 31 F.3d at 113. To the extent there are ambiguities or incongruencies between an "additional insured" endorsement and the lease that it references, those ambiguities should be construed in favor of the insured. Cf. ZKZ Assoc. v CNA Ins. Co., 224 A.D.2d 174, 175, 637 N.Y.S.2d 117, 118 (1st Dep't 1996) (holding that where an "additional insured" endorsement refers to a "lease" that is in

5

fact some other governing contract and not technically a lease, the incongruency is still resolved in favor of the insured).

### A. Defendant's Duty to Defend and Indemnify Amelia

To support its argument that the AI Endorsement's coverage does not extend to Amelia in the Underlying Action, defendant relies on the Lease and other evidence gathered during discovery. Even assuming that the four corners of the complaint give rise to an ambiguity as to whether defendant is liable for coverage in the Underlying Action, defendant has failed to supply any evidence that compels me "to leave the boundaries of the complaint" in determining its liability. See Moreau, 568 N.Y.S.2d at 468; Avondale Indus., Inc. v. Travelers Indem. Co., 774 F. Supp. 1416, 1424 (S.D.N.Y 2017) (finding that, in "exceptional circumstances," the insurer may rely on evidence apart from the underlying allegations to "establish to a certainty" that it faces no liability.)

Here, the extrinsic evidence that defendant relies on creates ambiguity, not "positive proof," as to defendant's liability. Moreau, 568 N.Y.S.2d at 468. For example, Exhibit A – defendant's hand-sketched silver bullet – is at odds with the testimony of Vintage's owner, who signed the Lease with the understanding that it included the sidewalk. And although the definition of "Premises" refers to the cross-hatched area of Exhibit A, the Lease also refers to Exhibit A as a "parking plan" (twice), suggesting that the purpose of the exhibit was to indicate which parking spots were reserved for Vintage rather than to carefully delineate the boundaries of the Leased property. Further, Vintage's obligations as a tenant, outlined in Section 11.02 of the Lease, include maintaining the sidewalks.[4] This obligation is difficult to square with the

---

[4] That Vintage's owner testified that he never paid any money to maintain parts of the sidewalks does not mean he was not obligated to do so, and he did testify that he pay to keep the portion of the sidewalk at issue free of snow and ice.

Common Area definition in Section 8.02 upon which defendant relies. Finally, defendant states that the Lease was not even tailored to Vintage's property, but nevertheless relies on an in-depth analysis of the Lease as positive proof absolving it of liability.[5] In doing so, however, defendant has unintentionally shown that the Lease may be ambiguous and poorly drafted, which cuts against its reliance on it here.

Indeed, when these ambiguities are construed against defendant, even defendant's most favorable evidence cannot establish "to a certainty" that defendant faces no liability. See Avondale, 774 F. Supp. at 1424. Thus, plaintiff's argument that defendant improperly relies on the Lease and other evidence extrinsic to the allegations in the Underlying Action is persuasive, as the evidence does not sufficiently clarify the ambiguities. See Moreau, 568 N.Y.S.2d at 468.

But even if defendant's extrinsic evidence had resolved these ambiguities and proved the Lease did not include the sidewalk, it would have no effect on defendant's duty to defend and indemnify Amelia. "New York courts have repeatedly held that, in the context of liability insurance coverage disputes, if a sidewalk is 'necessarily used for access in and out of the premise,' it is considered, 'by implication part of the premises.'" Kookmin Best Ins. Co., Ltd. v. Foremost Ins. Co., No. 18 Civ. 782, 2019 WL 1059973, at *6 (S.D.N.Y. Mar. 5, 2019) (quoting ZKZ, 89 N.Y.2d 990 at 991); see also Ambrosio v. Newburgh Enlarged Sch. Dist., 5 A.D.3d 410, 411, 774 N.Y.S.2d 153, 155 (2d Dep't 2004) ("Although the sidewalk where the injured

---

[5] Defendants also argue that because Amelia painted the sidewalk to avoid future accidents, Amelia must have been obligated to maintain the sidewalk, so plaintiff's is liable for Ms. Mich's fall. That Amelia took initiative to prevent future accidents has no bearing on plaintiff's liability (or, more telling, defendant's lack of liability). Indeed, Section 11.03 of the Lease expressly allows Amelia to fulfill Vintage's maintenance obligations under the Lease to avoid injury to others. And even if Amelia's post-accident painting rendered plaintiff liable, that liability need not be exclusive. Separately, Section 11.03, a section defendant apparently overlooked, refers to Vintage's maintenance obligations "to the Shopping Center or to the Premises," suggesting a broader scope of Vintage's obligations under the Lease than it asserts here.

plaintiff fell was not specifically named in the endorsement as leased premises, its use was incidental to the covered premises . . . .").

For some, using the sidewalk at issue in this case is necessary because the sidewalk slopes gradually into the parking lot. For everyone else, using the sidewalk at issue is inevitable because it is located directly in front of the entrance to Vintage, and the slope begins at the bottom of the stairs into Vintage. This is true whether or not the sidewalk extends throughout the rest of the shopping center in which Vintage is located. Construing the exclusionary clause in favor of defendants – so that it excludes sidewalks directly outside of the leased premise – would force me to disregard the above persuasive line of case law, which I decline to do.

Defendant's reliance on Chappaqua Cent. Sch. Dist. V. Philadelphia Indem. Ins. Co., 148 A.D.3d 980, 48 N.Y.S.3d 784 (2d Dep't 2017), to the contrary is unconvincing. As plaintiff notes, the Chappaqua parties stipulated that the insured had no obligation to maintain the staircase involved in the underlying action. Here, the parties dispute the scope of the maintenance obligations with respect to the sidewalk, as Section 11.02 requires Vintage to "keep and maintain in good order" the sidewalk, but Section 8.02 suggests that the sidewalk is Amelia's to maintain. Moreover, renting a single room within a middle school building for an after-school program – the premises at issue in Chappaqua – is different than renting an entire commercial building within a shopping center to open a restaurant. An ordinary person would reasonably expect that the latter entails greater liability than the former. See Haber, 137 F.3d at 695.

Another case on which defendant heavily relies, 625 Ground Lessor, LLC v. Continental Casualty Co., 131 A.D.3d 898, 17 N.Y.S.3d 26 (1st Dep't 2015), is also distinguishable. That case involved a claimant that was injured entering an elevator in the lobby of the additional-

8

insured's building "while en route to her employment with a tenant that leased space on the seventh through eleventh floors." Id. at 26-27. As defendant itself points out, the court held "the lobby and elevator were available to all employees of all tenants in the building and were no more necessary to the operation of tenant's business than they were to that of every commercial tenant in the building." Id. Here, however, the portion of the sidewalk on which Ms. Mich fell is "more necessary" to the operation of Vintage's business than it is for the other tenants in the shopping center: it is located directly in front of Vintage's front door, not the doors of the other tenants.

For these reasons, defendants are obligated by the Technology Policy to defend and indemnify Amelia in the Underlying Action.

### B. Defendant's Duty to Indemnify Plaintiff

Defendant argues that because both the Technology Policy and the Peerless Policy purport to be "excess over" the other, defendant and plaintiff are co-primary insurers. "[W]here two insurance policies provide primary coverage for the same risk, 'each company is obligated to share in the cost of the settlement and the expenses.'" Nat'l Cas. Co. v. Vigilant Ins. Co., 466 F. Supp. 2d 533, 540 (S.D.N.Y. 2006). "If the two policies contain irreconcilable 'other insurance' clauses, the clauses 'cancel each other out and the companies must apportion the costs of defending and indemnifying . . . on a pro rata basis.'" Kookmin, 2019 WL 1059973, at *8 (quoting Great N. Ins. Co. v. Mt. Vernon Fire Ins. Co., 92 N.Y.2d 682, 687, 685 N.Y.S.2d 411, (1999)).

Here, the Technology Policy states in the AI Endorsement that "[t]he coverage provided under this endorsement is excess over any primary insurance available to [Amelia]." The Peerless Policy, in turn, states in its "Other Insurance" section that it is excess over "[a]ny other

primary insurance available to [Amelia] covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement."

In Kookmin, the two policies' "excess over" clauses referred to different types of liability (direct physical loss to the premise on the one hand, and personal injury liability on the other), so the court was able to reconcile the clauses. Here, in contrast, the clauses both refer to the type of liability at issue in the Underlying Action. Thus, as defendant noted (and plaintiff has not contested), these two policies cannot be reconciled. The parties are therefore co-primary insurers of Amelia in the Underlying Action.

## **CONCLUSION**

Accordingly, plaintiff's [32] motion for summary judgment is GRANTED IN PART as to defendant's duty to defend and indemnify Amelia and DENIED IN PART as to defendants' role as the only primary insurer. Defendant's [33] motion for summary judgment is DENIED IN PART as to its duty to defend and indemnify Amelia and GRANTED IN PART as to plaintiff's role as a co-primary insurer. The parties shall submit a proposed form of judgment within 7 days that is consistent with this decision.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
July 25, 2019