UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
PEERLESS INSURANCE COMPANY,                    :
                                                :
            Plaintiff,                          :
                                                :    **MEMORANDUM DECISION AND**
        -against-                               :    **ORDER**
                                                :
TECHNOLOGY INSURANCE COMPANY,                   :    18-cv-1553 (BMC)
INC.,                                           :
                                                :
            Defendant.                          :
                                                :
---------------------------------------------------------- X

**COGAN**, District Judge.

On summary judgment, the Court decided that both Peerless Insurance Company ("Peerless") and Technology Insurance Company, Inc. ("Technology") have a co-primary duty to defend and indemnify Amelia Associate's, Inc. ("Amelia") for costs incurred in an underlying action against Amelia. See July 25 Memorandum Decision and Order, at 10. That decision, however, did not address which specific costs fall under the co-primary duty. Because the parties do not agree on whether the co-primary duty extends to a $15,000 medical cost paid by Peerless to the plaintiff in the underlying case, the Court ordered briefing on that matter. Upon consideration of the parties' submissions, the Court concludes that Technology must reimburse Peerless in the amount of $5,000 for medical costs paid to Kathleen Mich.

I

As an initial matter, the parties' co-primary duty to defend and indemnify Amelia extends only to where (1) both parties have primary coverage over a claim and no attendant "excess over" clause applies, or (2) both parties have primary coverage over a claim and both coverages have conflicting excess over clauses. See id. at 9-10.

Here, Coverages A and B implicate the co-primary duty. Both Peerless and Technology have identical Coverage A and Coverage B policies. Coverage A is for bodily injury and property damage "that the insured becomes legally obligated to pay as damages." Coverage B is for personal and advertising injury "that the insured becomes legally obligated to pay as damages." Because Peerless and Technology each have excess over provisions that apply to Coverages A and B, they both have a co-primary duty to defend and indemnify Amelia under Coverages A and B.

But although Technology has a co-primary duty under Coverages A and B, it is clear that the $15,000 medical cost does not fall under those policies. Coverages A and B apply to costs that "the insured becomes legally obligated to pay as damages." Axiomatically, an insured becomes so "legally obligated" only as "a result of an obligation imposed by law." See M & M Elec., Inc. v. Commercial Union Ins. Co., 241 A.D.2d 58, 60, 670 N.Y.S.2d 909, 911 (2d Dep't 1998).

Most New York courts to have addressed what constitutes an insurer's obligation to pay damages have held that "[l]iability of the insurer attaches when there is a final judgment against the insured . . .." State Farm Mut. Auto. Ins. Co. v. Westlake, 35 N.Y.2d 587, 591, 364 N.Y.S.2d 482, 485 (1974); C.O. Falter Constr. Co. v. Cincinnati Ins. Co., No. 09-cv-565, 2012 WL 13028649, at *12 (N.D.N.Y. Mar. 23, 2012) ("New York law follows the general rule that liability of the insurer attaches when there is a final judgment against the insured." (internal citations and alterations omitted)). Several courts have also recognized a legal obligation where an insured enters into a settlement agreement with a claimant. See, e.g., Caruso v. Northeast Emergency Med. Assocs., 54 A.D.3d 524, 525-27, 862 N.Y.S.2d 867, 868-69 (3d Dep't 2008). But without question, "there must be 'an establishment of legal liability for payment of damages'

to trigger the insurers' duty to indemnify the insured." Westchester Fire Ins. Co. v. Utica First Ins. Co., 40 A.D.3d 978, 980, 839 N.Y.S.2d 91, 93 (2d Dep't 2007) (quoting M & M Elec., Inc., 241 A.D.2d at 61, 670 N.Y.S.2d at 911).

This rule makes good sense as well – an insurer's duty to indemnify is often contractually paired with its right to defend the insured in a lawsuit *precisely because* the obligation to indemnify attaches upon judgment entered by a court (or some other legal obligation that arises between represented parties). See M & M Elec., Inc., 241 A.D. at 62, 670 N.Y.S.2d at 911 ("To hold that an insurer's duty to pay under the terms of a liability policy may arise even where no legal claim has been asserted against the insured, would be to nullify the important right that the liability insurer has to control the litigation which is contemplated, by the express terms of the policy, as a precondition to any duty to indemnify."). Thus, where, as here, Technology has a contractual right to defend against a claim, any obligation to indemnify the insured should arise only if Technology has been given the opportunity to exercise that right.

In this case, Peerless has made no showing that it paid the $15,000 in medical costs subject to a court judgment, binding settlement agreement, or even under the specter of any real or imminent litigation. As a matter of fact, Peerless's own affidavit confirms that it paid the medical costs to Kathleen Mich on September 22, 2014, more than two years before Mich even filed suit against Amelia, on February 17, 2017. That gap in time between the payment and the lawsuit's commencement, without evidence of any other legal obligation, forecloses the possibility that Peerless made the payment under its duty to defend and indemnify Amelia. Technology's respective co-primary duty under Coverages A and B, therefore, is not implicated here.

II

Coverage C is a different story. Peerless and Technology have identical Coverage C policies for "medical expenses . . . for 'bodily injury' caused by an accident" on the insured's premises, ways next to the insured's premises, or because of the insured's business operations. The preconditions for coverage under this policy are, (1) the accident takes place in the "coverage territory" and during the policy period; (2) the expenses are incurred and reported to the insurer within one year of the date of the accident; and (3) the injured person submits to examination at the insurer's request.

To be sure – and as Technology jumps to point out – Coverage C is not *literally* a policy for the "defense" or "indemnification" of an insured. Nevertheless, this Court's July 25 Memorandum Decision and Order undoubtedly controls the analysis here as well. See July 25 Memorandum Decision and Order, at 9. That decision held: "Where two insurance policies provide primary coverage for the same risk, 'each company is obligated to share in the . . . expenses.'" Id. (quoting Nat'l cas. Co. v. Vigilant Ins. Co., 466 F. Supp. 2d 533, 540 (S.D.N.Y. 2006). Therefore, if Peerless and Technology have co-primary duties under Coverage C and the medical expenses also fall under Coverage C, Technology will be "obligated to share in the . . . expenses" that Peerless paid on Amelia's behalf.

Both Peerless and Technology have a primary duty under their respective Coverage C policies to "pay medical expenses . . . for 'bodily injury' caused by an accident." This contractual duty to Amelia exists "regardless of fault" and broadly covers "reasonable expenses for . . . [n]ecessary medical, surgical, x-ray and dental services, . . . ambulance, hospital, professional nursing and funeral services." Because neither party's Coverage C falls under an

excess over provision, both Peerless and Technology have a co-primary duty to defend and indemnify Amelia for costs under Coverage C.

Moreover, the payment at issue falls under Coverage C as it satisfies all of the policy's preconditions. First, as established in the July 25 Memorandum Decision and Order, Kathleen Mich was injured in the "coverage territory" of Technology's policy. See id. at 6-9. Second, although cutting it close, it appears the medical expenses were "incurred and reported to [Technology] within one year of the date of the accident." According to Technology's brief: Kathleen Mich fell on April 18, 2014; Technology "was first notified of the incident involving Mich on or about February 24, 2015 . . . when it received an insurance claim form advising that a patron sustained unspecified injuries on the premises"; and Peerless paid Mich the $15,000 to cover medical expenses by check on September 22, 2014 (cleared September 30, 2014). Finally, although it was aware of the incident and the claim within one year of both, Technology presents no evidence that it requested Mich undergo a medical examination at any point or that Mich refused to do so at any point.

Thus, Technology must "share in the expenses" – here, the $15,000 medical payment – incurred by Peerless under Coverage C.

## CONCLUSION

Because Amelia's insurance policy with Technology caps its "Medical Expense Limit" at $5,000, Technology shall reimburse Peerless $5,000 plus pre-judgment interest for medical costs. Additionally, Technology shall reimburse Peerless for 50% of the remaining $7,821

excess over provision, both Peerless and Technology have a co-primary duty to defend and indemnify Amelia for costs under Coverage C.

Moreover, the payment at issue falls under Coverage C as it satisfies all of the policy's preconditions. First, as established in the July 25 Memorandum Decision and Order, Kathleen Mich was injured in the "coverage territory" of Technology's policy. See id. at 6-9. Second, although cutting it close, it appears the medical expenses were "incurred and reported to [Technology] within one year of the date of the accident." According to Technology's brief: Kathleen Mich fell on April 18, 2014; Technology "was first notified of the incident involving Mich on or about February 24, 2015 . . . when it received an insurance claim form advising that a patron sustained unspecified injuries on the premises"; and Peerless paid Mich the $15,000 to cover medical expenses by check on September 22, 2014 (cleared September 30, 2014). Finally, although it was aware of the incident and the claim within one year of both, Technology presents no evidence that it requested Mich undergo a medical examination at any point or that Mich refused to do so at any point.

Thus, Technology must "share in the expenses" – here, the $15,000 medical payment – incurred by Peerless under Coverage C.

## CONCLUSION

Because Amelia's insurance policy with Technology caps its "Medical Expense Limit" at $5,000, Technology shall reimburse Peerless $5,000 plus pre-judgment interest for medical costs. Additionally, Technology shall reimburse Peerless for 50% of the remaining $7,821

defense and indemnity costs plus pre-judgment interest.  Judgment will be entered separately pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED.**

```
                                              _____
                                                            U.S.D.J.
```

Dated: Brooklyn, New York
       October 21, 2019